## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

WILLIAM B. REEVES,            )
                                 )
             Plaintiff,    )
                                 )
           v.             )     1:10CV56
                                 )
CHANDRA RANSOM, MICHAEL AIKENS,  )
KENNETH LAWSON, BRIAN BOWEN,    )
K. EDWARDS,               )
                                 )
             Defendants.   )

## MEMORANDUM OPINION, ORDER, AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This matter comes before the Court on: (A) "Defendants' Motion to Set Aside Entry of Default" (Docket Entry 14) filed by Defendants Chandra Ransom ("Ransom"), Michael Aikens ("Aikens"), Kenneth Lawson ("Lawson"), K. Edwards ("Edwards") and Brian Bowen ("Bowen") (collectively "Defendants"); (B) Plaintiff William Reeves' ("Reeves") "Motion for Default Judgment" (Docket Entry 13); (C) Defendants' "Motion for Enlargement of Time" (Docket Entry 15); (D) Reeves' "Motion for Appointment of Counsel" (Docket Entry 18); (E) Reeves' "First Request for Discovery" (Docket Entry 20); (F) Reeves' "Motion for Leave to File an Amended Complaint" (Docket Entry 21); (G) "Defendants' Motion for Protective Order" (Docket Entry 22); and (H) Reeves' "Second Request for Discovery (Docket Entry 26).

For the reasons set forth herein, it is recommended that Defendants' Motion to Set Aside Entry of Default (Docket Entry 14) be granted, and Reeves' "Motion for Default Judgment" (Docket Entry

13) be denied.  Additionally, the Court will grant Defendants'
"Motion for Enlargement of Time" (Docket Entry 15), will deny
Reeves' "Motion for Appointment of Counsel" (Docket Entry 18), will
strike Reeves' "First Request for Discovery" (Docket Entry 20),
will deny Reeves' "Motion for Leave to File an Amended Complaint"
(Docket Entry 21), will grant "Defendants' Motion for Protective
Order" (Docket Entry 22), and will strike Reeves' "Second Request
for Discovery (Docket Entry 26).

## I.  BACKGROUND

### Factual Background[1]

This action arises out of an incident at the Scotland
Correctional Institution ("Scotland"), when Reeves, an inmate,
allegedly was denied certain "medical ordered" items by Defendants,
members of the Scotland staff.  (Docket Entry 2, at 4-5 & 9.)
Reeves suffers from "hip and back pain" and problems with his feet.
(Id. at 6.)  Additionally, he has "skin problems" which require
that his "clothes must be washed by themselves[.]"  (Id.)  Two
Medical Notification Slips from the North Carolina Department of
Correction ("NCDOC"), Division of Prisons, show that Reeves was
issued: "One (1) pair of black high top Dr. 2 Shoes with insoles
and arch supports size 12XW" (Docket Entry 2 at 16),[2] and an "Extra

---

[1] The facts are taken from Reeve's Complaint with page citations to the numbers incorporated into the CM/ECF footer.  (See Docket Entry 2.)

[2] The Medical Notification Slip issuing the shoes was not signed by a "Provider."  (Docket Entry 2 at 16.)

Pillow[,]" "Extra Mattress[,]" "Extra Blanket[,]" and "Special Wash" (id. at 13).

On May 10, 2009, Reeves was escorted from his assigned job by . . . Aikens to Red units [sic] lock up unit." (Id. at 4.)[3] Reeves asked Aikens to have his staff bring Reeves his medical items. (Id.) After Reeves was placed in the segregation unit:

> He declared a hunger stike. In order to talk with the Blue unit Assist Manager Ms. Ransom; {O.I.C.} officer in charge Lt. M. Aikens; and medical staff. On the above date Mother's day 10th, of May 2009. Plaintiff was seen by a medical staff member Ms. Eagles. Plaintiff along with Ms. Eagles told both Lt. Aikens and Ms. Ransom that there was a current written medical order from the medical physician . . . .

(Id. at 6-7 errant punctuation, misspellings and abbreviations in original).) "Ransom was working the Blue inmate housing unit" and she "stated [sic] she hasn't seen anything, but she had tried to find [his] clothing that had been placed in with other used clothes from the whole housing unit." (Id. at 4-5.)

Hours later:

> [C]orrectional officer Brian Bowen came to the lock up cell [Reeves] was now housed in [sic] officer Bowen only had one of everything, a mattress and some personal letters + books. [Reeves] asked officer Bowen what happened to his medical ordered special wash clothing. . . . Officer Bowen stated he would look into getting all [Reeves'] medically ordered items to him. Hours later, or so, officer Bowen stated that his sergeant Kenneth Lawson stated there was no paperwork from medical for [Reeves] to have any of the above mention [sic] items. Plus [Reeves] could face disciplinary action for having extra stuff in his cell anyway.

---

[3] According to a NCDOC Offense and Disciplinary Report, a food service officer stated that, on May 10, 2009, "Reeves admitted that he stole meat from the kitchen." (Docket Entry 2 at 15 (normal capitalization applied).)

(Id. at 4.) "There were copies of [Reeves'] medical issued 490 forms given to staff and placed on the OPUS computer systems. The Defendants Lt. M. Aikens; Chandra Ransom; and Sergeant Kenneth Lawson all has [sic] access to review inmates medical issued orders at anytime." (Id. at 7.) Bowen and Edwards "intentional [sic] stored [Reeves'] doctor ordered shoes in their storage system while [he] was housed in segregation." (Id. at 5.)

On May 19, 2009, Reeves filed a NCDOC, Division of Prisons, Administrative Remedy Procedure ("ARP") form complaining that:

> On or about the 10th, day of May 2009 @ 7:00 pm. I was placed on administrative segregation from the kitchen. The Blue unit management staff has refused to allow me to have medical ordered items. That includes, but are not limited to, extra blanket; extra pillow; extra mattress; and medical ordered specially wash clothing. Prior to entering administrative segregation housing unit I was in possession of these items, through medical staff. However, the Blue unit staff stated that there are no records of me being allowed these extra named items on their system and has refused to send them with me to segregation. Staff has a duty to investigate all claims first. I've suffered injuries as a proximate result of the breach of their duties by Blue unit staff. To exercise due care for my medical needs correctional staff are not suppose to interfere with a [sic] inmate's medical treatment at any time. To do so by Blue unit staff, clearly shows gross negligence.

(Id. at 9 (punctuation as in original).) On June 5, 2009, a "Step One - Unit Response" was provided stating: "An investigation from Blue Unit Assistant Manager, Ms. Ransom reveals that SGT Holloway claims he has no knowledge of this incident. Inmate William Reeves has not once asked about any of these items. On June 5, 2009 an officer was sent to check and inmate Reeves had all these items." (Id. at 10.) On June 10, 2009, Reeves signed his name under the

-4-

foregoing response and indicated that he sought an "Appeal to Step Two[.]" (Id.)  The step-two response stated that: "[I]t appears from the above statement that inmate Reeves has all the items listed.  **Therefore, no further action is recommended at this time.**" (Id. (emphasis in original).)[4]  On June 18, 2009, Reeves signed his name noting that he sought to "Appeal to Secretary, DOC[.]" (Id.)

On July 21, 2009, the NCDOC Inmate Grievance Resolution Board issued a step-three response stating: "[Reeves] asserts segregation staff would not allow him to have his "medical ordered items. . . . [A]n officer was sent to check on inmate's items and noted that the inmate had 'all' his items. . . . I am convinced that staff has adequately addressed this inmate's grievance concerns."  (Id. at 19.)

## Procedural Background

On January 22, 2010, Reeves filed his Complaint, alleging a claim under the Civil Rights Act, 42 U.S.C. § 1983.  (Docket Entry 2.)  The United States Marshal's Office effected service by mail on Defendants on or about April 3, 2010.  (Docket Entries 9, 10.)  On September 30, 2010, Reeves filed a "Declaration for Entry of Default" (Docket Entry 11), and the Clerk of Court issued an Entry of Default against Defendants for their failure to file an "appearance, answer or other pleading" (Docket Entry 12).  On October 7, 2010, Reeves filed a "Motion for Default Judgment."

_____

[4] The date that the step two response was made is illegible.  (Docket Entry 2 at 10.)

(Docket Entry 13.)[5] Defendants filed their "Motion to Set Aside
Entry of Default" and "Motion for Enlargement of Time" on October
28, 2010. (Docket Entries 14 & 15.) On November 9, 2010, Reeves
filed a response to Defendants' motion to set aside the entry of
default (Docket Entry 16), but he did not respond to the motion for
enlargement of time (see Docket Entries from Oct. 28, 2011 to
present). On November 24, 2010, Defendants filed their Answer.
(Docket Entry 17.)

Reeves thereafter filed his "Motion for Appointment of
Counsel" (Docket Entry 18), as well as his "First Request for
Discovery," in which he sought production for inspection and
copying of five categories of documents including, "The Complete
Prison Records of Plaintiff's [sic]" (Docket Entry 20 at 1-2). On
January 28, 2011, Reeves filed his "Motion for Leave to File an
Amended Complaint." (Docket Entry 21.) Defendants did not respond
to said motion (see Docket Entries from Jan. 28, 2011, to present),
but did, on February 8, 2011, file a "Motion for Protective Order"
(Docket Entry 22), to which Reeves failed to respond (see Docket
Entries from Feb. 8, 2011, to present). Reeves thereafter filed a
"Second Request for Discovery" (Docket Entry 26).

---

[5] Reeves failed to file a brief in support of said motion. "All motions
. . . shall be accompanied by a brief except as provided in section (j) of this
rule." M.D.N.C. R. 7.3(a). Section (j) does not exempt motions for default
judgment. See M.D.N.C. R. 7.3(j). "A motion unaccompanied by a required brief
may, in the discretion of the court, be summarily denied." M.D.N.C. R. 7.3(k).
Defendants' "Motion to Set Aside Entry of Default" and Reeves' "Motion for
Appointment of Counsel" suffer from the same problem. (See Docket Entries 14 &
18.) Under these circumstances, the Court could, but will not, sua sponte strike
the documents. See M.D.N.C. R. 83.4(3).

-6-

## II.  DISCUSSION

### A.  Motion to Set Aside Entry of Default

Defendants argue that good cause exists to set aside the entry of default.  (Docket Entry 15.)

#### 1.  Standard for Motion to Set Aside Entry of Default

The Federal Rules of Civil Procedure provide that "[t]he court may set aside an entry of default for good cause . . . ."  Fed. R. Civ. P. 55(c).  The United States Court of Appeals for the Fourth Circuit has set forth the relevant factors to make this determination as follows:

> When deciding whether to set aside an entry of default, a district court should consider [1] whether the moving party has a meritorious defense, [2] whether it acts with reasonable promptness, [3] the personal responsibility of the defaulting party, [4] the prejudice to the party, [5] whether there is a history of dilatory action, and [6] the availability of sanctions less drastic.

Payne v. Brake, 439 F.3d 198, 204-05 (4th Cir. 2006).  The Court must liberally construe Rule 55(c) "to provide relief from the onerous consequences of defaults and default judgments[,]" Lolatchy v. Arthur Murray, Inc., 816 F.2d 951, 954 (4th Cir. 1987) (internal quotation marks omitted), because, the Fourth Circuit has "repeatedly expressed a strong preference that, as a general matter, defaults be avoided and that claims and defenses be disposed of on their merits[,]" Colleton Prep. Academy, Inc. v. Hoover Universal. Inc., 616 F.3d 413, 417 (4th Cir. 2010).

#### 2.  Analysis of Motion to Set Aside Entry of Default

Defendants argue that the first, second, and fourth Payne factors are relevant and weigh in favor of setting aside an entry

of default.  (Docket Entry 19 at 5-7.)  Reeves responds that the third and fourth Payne factors are significant and support denying the motion.  (Docket Entry 16 at 1.)

### a.  Meritorious Defenses

"A meritorious defense requires a proffer of evidence which would permit a finding for the defaulting party . . . ."  Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp., 843 F.2d 808, 812 (4th Cir. 1988).  See also United States v. Moradi, 673 F.2d 725, 727 (4th Cir. 1982) ("[A]ll that is necessary to establish the existence of a 'meritorious defense' is a presentation or proffer of evidence, which if believed would permit either the Court or the jury to find for the defaulting party."); Maryland Nat'l Bank v. M/V Tanicorp I, 796 F. Supp. 188, 190 (D. Md. 1992) ("The mere assertion of a meritorious defense is not enough, Defendant must state the underlying facts to support the defense.").

Defendants' entire statement in this regard appears as follows: "It would be an injustice not to set aside the Entry of Default under the circumstances of this case because, upon information and belief, Plaintiff has filed a state tort claim action alleging against other Department of Correction personnel the same facts as in the Complaint against the Defendants herein, and upon information and belief Plaintiff has received the relief requested herein."  (Docket Entry 14 at 2.)  Defendants thus apparently contend generally that the preclusive effect of the state court action, or res judicata, bars Reeves' federal claim.

Res judicata collectively refers to claim preclusion and issue preclusion. Taylor v. Sturgell, 553 U.S. 880, 892 (2008). "Under the doctrine of claim preclusion, a final judgment forecloses 'successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit.'" Id. (emphasis added) (quoting New Hampshire v. Maine, 532 U.S. 742, 748 (2001)). "Issue preclusion, in contrast, bars 'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment,' even if the issue recurs in the context of a different claim." Id. at 892 (quoting New Hampshire, 532 U.S. at 748-49).

Reeves' claim under the federal statute, 42 U.S.C. § 1983, and his state tort claim could not be "the very same claim," Taylor, 553 U.S. at 892, so only issue preclusion could apply. Issue preclusion applies to bar claims raised in a subsequent lawsuit where: "(1) the issue or fact is identical to the one previously litigated; (2) the issue or fact was actually resolved in the prior proceeding; (3) the issue or fact was critical and necessary to the judgment in the prior proceeding; (4) the judgment in the prior proceeding is final and valid; and (5) the party to be foreclosed by the prior resolution of the issue or fact had a full and fair opportunity to litigate the issue or fact in the prior proceeding." In re Microsoft Corp. Antitrust Litig., 355 F.3d 322, 326 (4th Cir. 2004).

Defendants have not demonstrated that they could satisfy all of these elements.  On the other hand, Reeves has not shown that Defendants lack a valid defense related to his state action.  Moreover, Defendants, in their belated Answer (Docket Entry 17), which they have sought leave to file out-of-time (<u>see</u> Docket Entry 15), have asserted additional defenses, including qualified immunity (<u>see</u> Docket Entry 17 at 4-5).

The first factor thus does not weigh in favor of setting aside the clerk's entry of default, but rather appears neutral.

b.  Reasonable Promptness

Defendants claim that they were reasonably prompt given that they "did not know of their right under §143-300.3 of the North Carolina General Statutes to request legal representation by the Attorney General. . . . [T]he failure to respond within the time allotted was understandable and within the meaning of excusable neglect."  (Docket Entry 14 at 1-2.)[6]  Reeves argues that "Defendants had well over 150 days to contact their supervisors as well as the North Carolina Attorney General's office on this matter at hand.  However, the Defendants choose [sic] not to, do [sic] to

---

[6] The cited provision governs the "Defense of State employees":

Except as otherwise provided in G.S. 143-300.4, upon request of an employee or former employee, the State may provide for the defense of any civil or criminal action or proceeding brought against him in his official or individual capacity, or both, on account of an act done or omission made in the scope and course of his employment as a State employee.

N.C. Gen. Stat. § 143-300.3.

the facts surrounding these documented proof." (Docket Entry 16 at
1.)

    "Whether a party has taken 'reasonably prompt' action, of
course, must be gauged in light of the facts and circumstances of
each occasion . . . ." <u>Moradi</u>, 673 F.2d at 727. Defendants filed
their motion to set aside entry of default on October 28, 2010,
approximately seven months after service by mail of the Complaint
and 28 days after the Clerk's Entry of Default. (<u>See</u> Docket
Entries 2, 11, 14.) Other courts have proceeded to address the
merits of a case where the defaulting party waited longer to move
to set aside the default. <u>See, e.g.</u>, <u>Lolatchy</u>, 816 F.2d at 952-54
(permitting case to proceed on the merits although moving party
delayed ten months after court entered default before filing its
motion to set aside default); <u>Vick v. Wong</u>, 263 F.R.D. 325, 330
(E.D. Va. 2009) (finding that reasonable promptness factor weighed
in favor of setting aside default where moving party did not
respond for more than two months after clerk entered default, but
did respond a few weeks after plaintiff filed motion for entry of
default judgment); <u>Wainwright's Vacations, LLC v. Pan Am. Airways
Corp.</u>, 130 F. Supp. 2d 712, 718 (D. Md. 2001) (concluding that
moving party acted with reasonable promptness by making motion to
vacate default slightly more than a month after entry of default).

    The second factor therefore supports setting aside the entry
of default.

<u>c. Personal Responsibility</u>

"[J]ustice also demands that a blameless party not be disadvantaged by the errors or neglect of his attorney which cause a final, involuntary termination of proceedings." <u>Moradi</u>, 673 F.2d at 728. The Fourth Circuit has explained the significance of this factor as follows:

> This focus on the source of the default represents an equitable balance between our preference for trials on the merits and the judicial system's need for finality and efficiency in litigation. When the party is blameless and the attorney is at fault, the former interests control and a default judgment should ordinarily be set aside. When the party is at fault, the latter interests dominate . . . .

<u>Augusta Fiberglass Coatings</u>, 843 F.2d at 811.

Reeves appears to argue that this factor weighs in favor of denying Defendants' motion. (<u>See</u> Docket Entry 16 at 1.) As stated in the previous subsection, Reeves contends that "Defendants had well over 150 days to contact their supervisors as well as the North Carolina Attorney General's office on this matter at hand. However, the Defendants choose [sic] not to . . . ." (<u>Id.</u> at 1.) Defendants provide no discussion regarding the "personal responsibility" factor. (<u>See</u> Docket Entry 14.) The docket shows that Defendants' counsel, Lisa Harper, entered her appearance while simultaneously filing Defendants' motions. (<u>See</u> Docket Entries 1 & 15.) Therefore, the Court finds no evidence that any delay is attributable to Ms. Harper.

Accordingly, Defendants are "personally responsible" for the entry of default, and, as a result, the third factor weighs against setting it aside.

### d. Prejudice

Defendants assert in conclusory manner that Reeves "will not be prejudiced by the granting of relief for Defendants to have the entry of default entered set aside." (Docket Entry 14 at 2.) Reeves responds that he "will be prejudiced by any type of delay in this hearing. [He] will be scheduled for an [sic] parole hearing in under 3 years." (Docket Entry 16 at 3 (emphasis in original).)

Reeves does not cite any authority for the proposition that the delay of litigation amounts to prejudice under circumstances where the plaintiff anticipates a parole hearing within three years. (See id.) The Fourth Circuit has stated that, "[i]n the context of a motion to set aside an entry of default, as in other contexts, delay in and of itself does not constitute prejudice to the opposing party. As we noted in *Payne*, the issue is one of *prejudice to the adversary*, not merely the existence of delay." Colleton Prep. Academy, 616 F.3d at 418 (internal citation omitted, emphasis in original). Reeves' argument does not show prejudice because it equates the delay itself to prejudice.

In Lolatchy, the Fourth Circuit discussed the absence of certain indicators of prejudice:

> There was no missing witness in the case whose testimony was made unavailable by the delay; there was similarly no dead witness; neither were there any records made unavailable by the delay, nor was there any evidence for the plaintiff which could have been presented earlier,

> the presentation of which was prevented by the delay.
> . . . So the record shows without contradiction that the
> plaintiff suffered no prejudice on account of the delay.

816 F.2d at 952-53. Said indicators are notably absent in this
case. Thus, this factor weighs in favor of setting aside the entry
of default, because Reeves has shown no prejudice.

### e. History of Dilatory Action

Neither party provided any argument regarding Defendants'
history of dilatory action. (See Docket Entries 11, 14 & 16.)
This case is in an early stage of litigation and, separate from the
issues already discussed, the record does not reflect evidence of
dilatory conduct by Defendants. This factor therefore favors
setting aside the entry of default.

### f. Less Drastic Sanctions

"Neither party has suggested alternative sanctions, but the
Court [can] certainly consider any suggestions that are brought
before it, such as a motion for reimbursement of Plaintiff's costs
associated with [his motion for default judgment and] response to
Defendant's motion to set aside default. Therefore, this factor
counsels in favor of setting aside default." Pinpoint IT Servs.,
L.L.C. v. Atlas IT Export Corp., No. 2:10CV516, 2011 WL 2748685, at
*15 (E.D. Va. July 13, 2011) (unpublished) (internal citation
omitted).

### 3. Brief Conclusion

To summarize, factors two, four, five and six support setting
aside the entry of default, factor three does not, and factor one
appears neutral. Furthermore, the Fourth Circuit has stated a

-14-

strong preference that "defaults be avoided and that claims and defenses be disposed of on their merits." Colleton Prep. Academy, 616 F.3d at 417. Under these circumstances, good cause exists to set aside the entry of default.

### B. Motion for Default Judgment

Reeves "moves . . . for a judgment by default[,]" arguing that "[d]efault was entered in the civil docket . . . [and] no proceedings have been taken by the Defendants since the default was entered." (Docket Entry 13 at 1.) In fact, Defendants have moved to set aside the entry of default and for leave to file a belated answer. (Docket Entries 14, 15.) Moreover, as the preceding discussion reflects, good cause exists to set aside the entry of default. As a result, Reeves' motion for default judgment (Docket Entry 13) should be denied.

### C. Motion for Enlargement of Time

Defendants have moved that their "time for answering or otherwise respond [sic] be enlarged up to an [sic] including 26 November 2010." (Docket Entry 15 at 2.) Defendants argue that: "Additional time is needed . . . to obtain readable copies of grievances, investigate facts, determine issues of legal representation, and research applicable law . . . . [T]rial will not be delayed and Plaintiff will not be prejudiced by any delay because Plaintiff is serving a life term." (Id.) Reeves has not responded to this motion. (See Docket Entries from Oct. 28, 2010, to present.)

In light of the conclusion that Defendants' motion to set aside the Clerk's entry of default (Docket Entry 14) should be granted and that Reeves' motion for default judgment (Docket Entry 13) should be denied, as well as Reeves' failure to respond to the instant motion, see M.D.N.C. R. 7.3(k), Defendants' motion for enlargement of time (Docket Entry 15) is granted.

D.  Motion for Appointment of Counsel

Reeves has requested appointment of counsel.  (Docket Entry 18.) "[A] plaintiff does not have an absolute right to appointment of counsel." Miller v. Simmons, 814 F.2d 962, 966 (4th Cir. 1987). Instead, the provision of counsel through the auspices of the Court remains, "as [does] the privilege of proceeding in forma pauperis, a matter within the discretion of the District Court.  It is a privilege and not a right." Bowman v. White, 388 F.2d 756, 761 (4th Cir. 1968).

In delineating the scope of this discretion, the Fourth Circuit has held that a litigant "must show that his case is one with exceptional circumstances." Miller, 814 F.2d at 966 (citing Cook v. Bounds, 518 F.2d 779, 780 (4th Cir. 1975)). "The question of whether such circumstances exist in any particular case hinges on characteristics of the claim and the litigant." Whisenant v. Yuam, 739 F.2d 160, 163 (4th Cir. 1984), abrogated in part on other grounds, Mallard v. United States Dist. Ct. for S.D. of Iowa, 490

U.S. 296 (1989).[7]  More pointedly, "[i]f it is apparent to the district court that a pro se litigant has a colorable claim but lacks the capacity to present it, the district court should appoint counsel to assist him." <u>Gordon v. Leeke</u>, 574 F.2d 1147, 1153 (4th Cir. 1978).

"Exceptional circumstances" do not exist in this case, because it is not "apparent" that Reeves lacks the ability to present his claim.  The Court observes that Reeves has demonstrated the ability to articulate the basis of his claim and the relevant allegations in a coherent manner.  (<u>See</u> Docket Entry 2.)  Moreover, he has shown the ability to file motions and other documents in conformity with the Federal Rules of Civil Procedure in which he clearly states his positions.  (<u>See</u> Docket Entries 13, 16 & 18.)  Thus, it is not "apparent" that he lacks the ability to present his claim, <u>see</u> <u>Gordon</u>, 574 F.2d at 1153.

---

[7] In <u>Mallard</u>, the United States Supreme Court ruled that a court could <u>not</u> make "compulsory assignments of attorneys in civil cases" pursuant to the provision in 28 U.S.C. § 1915 (then codified at subsection (d), now set out in subsection/paragraph (e)(1)) stating that a "'court may request an attorney to represent' an indigent litigant," <u>Mallard</u>, 490 U.S. at 300-01 (holding that the statute's use of the word "request" means that courts may ask, but may not command, attorneys to represent civil litigants).  The Supreme Court also declined to "express an opinion on the question whether the federal courts possess inherent authority to require lawyers to serve." <u>Id.</u> at 310.  Because this Court ultimately concludes that this case fails to present exceptional circumstances warranting judicial intervention to secure counsel for Reeves, no need exists to explore further how the Court might provide counsel in an appropriate case.

Reeves argues that "[he] is unable to afford counsel. He has requested leave to proceed in forma pauperis." (Docket Entry 18 at 1.) Additionally, Reeves contends that:

> [His] imprisonment will greatly limit his ability to litigate. The issues involved in this case are complex, and will require significant research and investigation. Plaintiff has limited access to the law library {none in the N.C. Departmen [sic] of Correction} and limited knowledge of law.

(Docket Entry 18 at 1.) Reeves' inability to afford counsel and the effect of his imprisonment on his ability to litigate his case are insufficiently "exceptional" to merit appointment of counsel. See Joe v. Funderburk, No. 8:06-119-GRA-BHH, 2006 WL 2707011, at *1 (D.S.C. Sept. 18, 2006) (unpublished) ("Plaintiff cites that he is unable to afford counsel, that his imprisonment limits his ability to litigate his case . . . . Almost every prisoner bringing a § 1983 claim would be able to cite the same circumstances as plaintiff here, and so the Court can hardly consider these circumstances to be exceptional." (italics in original)), aff'd, 215 Fed. Appx. 307 (4th Cir. 2007).

Moreover, the instant claim appears straightforward. Specifically, Reeves has alleged that, on May 10, 2009, despite the fact that he was issued certain items to treat his skin, foot, hip and back conditions, Defendants did not obtain those items for him or denied him access to those items. (Docket Entry 2 at 4-5.) Although the presentation of some constitutional claims regarding deliberate indifference to the provision of medical care may

involve complex issues or require the investment of substantial resources, it not does appear that Reeves' claim should.

As to Reeves' point regarding his limited access to legal resources, the United States Supreme Court has held that while prisoners have a "right of access to the courts[,]" the Supreme Court has not created a "freestanding right to a law library or legal assistance[.]" <u>Lewis v. Casey</u>, 518 U.S. 343, 354 (1996) ("Because [<u>Bounds v. Smith</u>, 430 U.S. 817 (1977),] did not create an abstract, freestanding right to a law library or legal assistance, an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense."). "[T]he constitutional right of meaningful access to the courts, via law libraries or persons trained in the law, does not extend 'further than protecting the ability of an inmate to prepare a petition or complaint.'" <u>Wrenn v. Freeman</u>, 894 F. Supp. 244, 248 (E.D.N.C. 1995) (quoting <u>Wolff v. McDonnell</u>, 418 U.S. 539, 576 (1974)) (first set of internal quotation marks from earlier Eastern District of North Carolina case omitted). "Plaintiff obviously was able to prepare a complaint and thus his right to access the courts has not been compromised." <u>Tolbert v. Wyatt</u>, No. 1:10CV49, 2010 WL 481253, at *3 (M.D.N.C. Feb. 5, 2010) (unpublished).

Reeves has failed to demonstrate that he lacks the ability to present his claim and, therefore, "exceptional circumstances" do not exist. Accordingly, Reeves' Motion for Appointment of Counsel (Docket Entry 18) is denied.

E.  Requests for Production of Documents

Reeves' First Request for Discovery states that, "[p]ursuant to Rule 34 of the Federal Rules of Civil Procedure, [he] requests that the Defendants . . . produce for inspection and copying" five categories of documents.  (Docket Entry 20 at 1.)  His Second Request for Discovery similarly cites Rule 34 in seeking production of videotape footage and medical records.  (Docket Entry 25 at 1-2.)

Under the Federal Rules of Civil Procedure, requests for documents "must not be filed until they are used in the proceeding or the court orders filing[.]" Fed. R. Civ. P. 5(d)(1).  Moreover, the Court's Local Rules similarly state that "discovery papers must be served on other counsel or parties[,]" but "requests for documents . . . shall not be filed unless the court so orders or unless the court will need such documents in a pretrial proceeding."  M.D.N.C. R. 26.1(b)(3).

Reeves has unnecessarily filed his two Requests for Discovery, because the Court has not ordered the filing of discovery requests and Reeves has not used the Requests in the proceeding.[8]  The Local Rules permit the Court to "make such orders as are just under the circumstances of the case" where "a party fails to comply with a local rule of this court[.]"  M.D.N.C. R. 83.4(a).  The Local Rules

---

[8] The Requests do not represent erroneously named motions to compel, pursuant to Rule 37, because Reeves has not identified any objections by Defendants made prior to filing the Requests with the Court.  (See Docket Entries 20, 25.)  Moreover, Reeves includes legal arguments which are not directed to any specific objections.  (Id.)

list sanctions that may be imposed including "an order striking out pleadings or parts thereof[.]"  Id.

In United States v. Maye, 5:06-CR-282-1Fl, 2007 U.S. Dist. LEXIS 2870, at *1-2 (E.D.N.C. Jan. 10, 2007) (unpublished), the defendant filed a discovery request that did not require any "'action by the court[,]'" lacked any statement that a request for discovery "'was made and denied,'" and the defendant did not appear to have conferred with the plaintiff regarding the requested materials.  The district court ordered the defendant's discovery request stricken and reasoned:

> The court finds inappropriate such filing of a discovery request not associated with a motion for relief by the filing party or another party or other proceeding in court.  The filing of the request imposes on the court the burden of reviewing and retaining the request even though no action by it is required.  There are other means by which the record of such a discovery request can be preserved without imposing on the court.

Id. at *2-3.

Accordingly, the Court orders Reeves' Requests for Discovery (Docket Entries 20, 25) stricken.

F.  Motion to Amend Complaint

Reeves seeks leave to amend his Complaint for the purpose of "adding a party" and "to include more or different facts plus add a new legal claim."  (Docket Entry 21 at 1.)  Reeves' motion further clarifies that he seeks to add four additional defendants, Enith McNair ("McNair"), W. Davis ("Davis"), R. Rouse ("Rouse"), B. Holloway ("Holloway") and Keydnda Bratcher ("Bratcher"), as well as

new claims, "Due Process Rights" and "Retaliation." (Id. (internal quotation marks and emphasis omitted).)

According to Reeves, on February 13, 2009, Edwards and Rouse placed "all of [Reeves'] doctor ordered 'self prescribed medications' and medical issued 'Dr. 2 Shoes' into the Blue Unit's Storage System[,]" and Reeves had "no type of access" to those items. (Id. at 2 (emphasis omitted).) Reeves further alleges that, on April 15, 2009, Rouse and Halloway "intentionally delayed or denied [Reeves] access" to treatments and "interfered with treatments[.]" (Id. at 3.) In addition, Reeves claims that Rouse and Holloway made an inventory of his property which showed "lost or destruction [sic][;]" "'self prescribed medications' and medical issued 'Dr. 2 Shoes' was still in their Blue unit's storage system[;]" and "'self prescribed pills'" were missing. (Id.)

Next, Reeves states that, on August 30, 2009, he again was placed in segregation and that, in connection with that incident, McNair and Davis demonstrated "deliberate indifference" in that they "denied or delayed [Reeves'] access to his treatments" by completing an inventory form which indicated that Reeves' "medication" and "Dr. 2 Shoes," along with other items, had been placed in storage. (Id. at 1-2 (emphasis and internal quotation marks omitted).) Reeves asserts that, also on August 30, 2009, Ransom, Halloway and Bratcher "conspired to retaliate against [him] for filing both state and federal lawsuits against Scotland

Correctional members." (Id. at 3.)[9]  Reeves claims that "[he] was set up with a disciplinary offensive [sic] of having a cell phone in his possession," that he pled with Bratcher that "he was being set up" and that video from the camera system would confirm that "no officer had any cell phone in plaintiff's possession . . . ." (Id. at 3-4.)  According to Reeves, Bratcher told him to "plea [sic] guilty . . . [s]o he could transfer and get out everyones [sic] hair . . . ." (Id. at 4.)  Moreover, Reeves alleges that Bratcher told a disciplinary hearing officer that "the video camera's tape wasn't working . . . on that day and time" despite other evidence that the "camera system was working fine." (Id.) Reeves states that he "was found guilty and given I-CON status and loss of good time, 6 months on segregation and moved to another close custody prison." (Id.)

### 1.  Standard for Motion for Leave to Amend Complaint

Given the current procedural posture of the case, Reeves may "amend [his] pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2).  Said rule further directs that "[t]he court should freely give leave when justice so requires." Id.  Under this standard, the Court has some discretion, "but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion." Foman v. Davis, 371 U.S. 178, 182 (1962).  The

---

[9] Reeves does not identify the lawsuits (see Docket Entry 21 at 3), but the reference could not encompass the instant action which was filed on January 22, 2010, nearly five months after the alleged retaliatory conduct.  (See Docket Entry 2.)

Fourth Circuit has explained that "[t]he law is well settled that leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." Edwards v. City of Goldsboro, 178 F.3d 231, 242 (4th Cir. 1999). See also Foman, 371 U.S. at 182 (identifying "undue delay," "bad faith," "undue prejudice," and "futility," as grounds to deny amendment).

"An amendment would be futile if the amended claim would fail to survive a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6)." Syngenta Crop Prod., Inc. v. EPA, 222 F.R.D. 271, 278 (M.D.N.C. 2004). A plaintiff fails to state a claim when the complaint does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (emphasis added) (internal citations omitted) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. In other words, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the

elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.[10]

## 2. Analysis

Reeves has not obtained Defendants' written consent to amend his Complaint. (See Docket Entry 21 at 1-4.) Defendants have not responded to Reeves' instant motion. (See Docket Entries dated Jan. 28, 2011, to present.) This failure generally warrants granting the requested relief. See M.D.N.C. R. 7.3(k). However, because of clear problems with Reeves' proposed course of action, the Court declines to grant leave to amend. Most notably, Reeves' proposed amendments portend prejudice and, at least in large part, are futile.

### a. Prejudice

Reeves' proposed allegations, parties, and claims would incorporate issues and facts which bear no apparent relationship to the original claim, and, as a result, prejudice both Defendants and

---

[10] "[D]etermining whether a complaint states on its face a plausible claim for relief and therefore can survive a Rule 12(b)(6) motion . . . requires the reviewing court to draw on its judicial experience and common sense." Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009). Moreover, although the Supreme Court has reiterated that "[a] document filed pro se is to be liberally construed and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers," Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal citations and quotation marks omitted), the Fourth Circuit has "not read Erickson to undermine Twombly's requirement that a pleading contain more than labels and conclusions," Giarratano v. Johnson, 521 F.3d 298, 304 n.5 (4th Cir. 2008) (internal quotation marks omitted) (applying Twombly standard in dismissing pro se complaint). Accord Atherton v. District of Columbia Off. of Mayor, 567 F.3d 672, 681-82 (D.C. Cir. 2009) ("A pro se complaint . . . 'must be held to less stringent standards than formal pleadings drafted by lawyers.' But even a pro se complainant must plead 'factual matter' that permits the court to infer 'more than the mere possibility of misconduct.'" (quoting Erickson, 551 U.S. at 94, and Iqbal, 129 S. Ct. at 1950, respectively)).

the proposed defendants. The allegations and claims are directed against different individuals, with the sole exception of Ransom. The claim of retaliation alleged against Ransom bears no connection to the instant matter and, instead arises out of a conspiracy to retaliate against Reeves for the filing of a lawsuit <u>prior</u> to the initiation of this action. Furthermore, Reeves' proposed claims and facts are distinct from the original Complaint, in that they are tied to activity <u>prior</u> to May 10, 2009, or are connected to an alleged conspiracy unrelated to Reeves' alleged deprivation of medical provisions beginning with his May 10, 2009, placement in segregation.

The proposed amendments thus would complicate this case and magnify the risk of confusion in a prejudicial fashion. <u>See</u> <u>United States ex. rel. Knight v. Reliant Hospice Inc.</u>, Case No. 3:08-3724-CMC, 2011 U.S. Dist. LEXIS 36813, at *14-15 (D.S.C. Apr. 4, 2011) (unpublished) ("[I]f allowed in full, the proposed amendments would add new allegations and parties vastly expanding what is at issue in this action. . . . At least some of the added allegations, even if bearing some relationship to the original claim, are also so clearly distinct from the original claims that they will vastly expand the complexities of proof and risk confusion of the jury. Each of these considerations leads the court to conclude that granting the motion to amend in full would be unduly prejudicial both to the original Defendants and those to be added."); <u>Tompkins v. Dep't of Corr.</u>, 1:08cv322-01-MU, 2009 U.S. Dist. LEXIS 22329, at *4-6 (W.D.N.C. Mar. 9, 2009) (unpublished) ("The claims Plaintiff

wishes to add to his Complaint are not related to the remaining claim before this Court. . . . The claims Plaintiff seeks to add to his Complaint are based upon two disciplinary infractions unrelated to the pending claim and name several new defendants. Such an amendment would unnecessarily complicate the matter, cause undue prejudice to Defendant Mitchell, and undermine the effectiveness of the Prison Litigation Reform Act.") (citing <u>Graham v. Stansberry</u>, NO. 5:07-CT-3015-FL, 2008 U.S. Dist. LEXIS 64067, 2008 WL 3910689 (E.D.N.C. Aug. 20, 2008) (unpublished), and <u>George v. Smith</u>, 507 F.3d 605, 607 (7th Cir. 2007)).

Such undue prejudice warrants denial of the proposed amendment. <u>See</u> <u>Foman</u>, 371 U.S. at 182.

### b. Futility

A number of Reeves' proposed claims are also futile because they fail to allege sufficient factual matter to survive a motion to dismiss pursuant to Rule 12(b)(6).

Reeves' claims based on the February 13, 2009, incident and the August 30, 2009, conduct involving McNair and Davis (<u>see</u> Docket Entry 21 at 1-2) are futile. "Claims that prison officials failed to provide adequate medical care . . . sound in the Eighth Amendment . . . [and thus] there is a subjective and an objective component to showing a violation of the right. The plaintiff must demonstrate that the [officials] acted with 'deliberate indifference' (subjective) to the inmate's 'serious medical needs' (objective)." <u>Iko v. Shreve</u>, 535 F.3d 225, 241 (4th Cir. 2008).

"Deliberate indifference is a very high standard – a showing
of mere negligence will not meet it."  Grayson v. Peed, 195 F.3d
692, 695 (4th Cir. 1999).    Instead, Reeves must make "two
showings":

> First, the evidence must show that the official in
> question subjectively recognized a substantial risk of
> harm.  It is not enough that the [official] *should have*
> recognized it; [he] actually must have perceived the
> risk.  Second, the evidence must show that the official
> in question subjectively recognized that his actions were
> inappropriate in light of that risk.  As with the
> subjective awareness element, it is not enough that the
> official *should have* recognized that his actions were
> inappropriate; the official actually *must have* recognized
> that his actions were insufficient.

Parrish ex rel. Lee v. Cleveland, 372 F.3d 294, 303 (4th Cir. 2004)
(internal citations and quotation marks omitted) (emphasis in
original).  "The subjective component therefore sets a particularly
high bar to recovery."  Iko, 535 F.3d at 241.

A plaintiff's deliberate indifference claim will not survive
a motion to dismiss where the plaintiff fails to allege facts
establishing the defendant's subjective knowledge of the
plaintiff's condition.  See Banks v. Barnes, 1:04CV199, 2005 U.S.
Dist. LEXIS 41709, at *19 (M.D.N.C. June 8, 2005) (unpublished)
(Dixon, M.J.) ("Plaintiff has not alleged that Defendant Walts
[sic] knew anything at all about Plaintiff's condition.  Therefore,
a claim against Defendant Walls for deliberate indifference to
Plaintiff's medical needs cannot stand and Plaintiff's claim should
be dismissed . . . .").

Even when viewed through the forgiving lens of liberal
construction, see Erickson v. Pardus, 551 U.S. 89, 94 (2007)

(reiterating that "document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers" (internal citations and quotation marks omitted)), Reeves' proposed allegations regarding the August 30, 2009, activity involving McNair and Davis fails to state a plausible claim. Reeves has not alleged that McNair and Davis knew their actions disregarded a substantial risk of harm to Reeves or that their actions were inappropriate in light of a risk of harm. (See Docket Entry 21 at 1-2.) In the absence of any allegation of facts showing the subjective prong, Reeves' proposed claim would not survive a motion to dismiss and is futile.

Additionally, Reeves' allegations regarding the February 13, 2009, conduct connected to Edwards and Rouse does not state a plausible claim. In a grievance, Reeves wrote:

> On or about the 13th day of February 2009. I was placed in the Scotland Correctional's segregation unit. . . . The staff K. Edwards + R. Rouse placed my Dr 2 shoes that's [sic] been order [sic] from medical staff PA in storage. There [sic] Dr. ordered 2 shoes are to aide in my medical needs. The staff here has interfered with the treatment of the PA's orders. Do [sic] in part that their policy to place all inmates [sic], personal and legal properties in storage. All named staff have shown deliberate indifference. When they negligencely [sic] denied or delayed me the [sic] access to continue my medical treatment. Prison staff knew about the serious medical needs with having Dr. 2 shoes. As a result of not having my shoes while on disciplinary segregation for 60 days. I suffered continued harm and reinjury [sic] to my feet. You can only receive these shoes from the PA's order.

(Docket Entry 21-1 at 18 (emphasis added).)[11] The grievance alleges that Edwards and Rouse knew of Reeves' medical problem and that his shoes had been issued for a medical purpose. Reeves alleges that their storage of the shoes amounted to negligence (id.), but negligence does not meet the "very high standard" of "[d]eliberate indifference[,]" Grayson, 195 F.3d at 695. Having failed to allege facts showing deliberate indifference, Reeves' proposed claim regarding the February 13, 2009, conduct would not survive a motion to dismiss and is futile.

In sum, the Court denies Reeves' Motion for Leave to File an Amended Complaint (Docket Entry 21) because his proposed claims are

---

[11] On March 3, 2011, Reeves filed his "Plaintiff's Exhibit Transcript of Trial," but he did not identify the motion to which this exhibit was connected. (See Docket Entry 24.) This document was filed 34 days after Reeves' Motion for Leave to File an Amended Complaint. (See Docket Entries 21 & 24.) The document includes transcripts from two hearings held on November 4, 2010, before the North Carolina Industrial Commission. (Docket Entry 24.) In each hearing, Reeves examined Rouse (Docket Entry 24 at 23-28, 49-53) and Rouse testified regarding the policies on storing an inmates' medical items, as well as the medical nature of "Dr. 2 Shoes" (see id. at 24-26, 50-52). The Fourth Circuit held that, "in considering motions to dismiss under *Rule 12(b)(6)*, the court may properly consider exhibits attached to the complaint." Smith v. McCarthy, 349 Fed. Appx. 851, 856 (4th Cir. 2009) (unpublished) (citing Fayetteville Investors v. Commercial Builders, Inc., 936 F.2d 1462, 1465 (4th Cir. 1991)). The Smith Court held that a district court applied the correct standard in considering a trial transcript on a motion to dismiss where the plaintiffs "cited to the trial transcript in their complaint, and their counsel filed a copy of the transcript with the trial court, citing his intention to rely upon it in argument on the motions to dismiss." Id. Reeves does not refer to the hearing transcripts in his Complaint or in his motion seeking leave to file an amended complaint. (See Docket Entries 2 & 21.) Having filed the transcript-exhibits more than 21 days after filing his motion, Reeves' exhibit would supplement his motion after Defendants' time for filing a response had expired, see M.D.N.C. R. 7.3(f) (requiring that non-movant file a response within 21 days after service of a motion). Under these circumstances, the Court does not construe the hearing transcripts as exhibits to Reeves' motion. Therefore, the Court shall not consider these transcripts to determine if Reeves' proposed amended complaint alleges sufficient facts to survive a motion to dismiss.

largely futile and, to the extent they are not futile, would create undue prejudice.

### G. Motion for Protective Order

Defendants request that the Court "enter an order granting protection from Plaintiff's discovery request and to grant such other relief as may be just and proper." (Docket Entry 22 at 1.) Defendants argue that: "Having raised the affirmative defense of qualified immunity, Defendants are entitled to reasonable protection from Plaintiff's discovery request until such time as the Court can determine immunity issues in the case. Permitting Plaintiff to engage in discovery would unduly burden Defendants and deprive them of the benefit of immunity." (Docket Entry 23 at 2.) Qualified immunity is "an entitlement not to stand trial <u>or face the other burdens of litigation</u> . . . ." <u>Mitchell v. Forsyth</u>, 472 U.S. 511, 526 (1985) (emphasis added).

Reeves has not responded. (<u>See</u> Docket Entries dated February 8, 2011, to present.) This failure generally warrants granting Defendants' motion. <u>See</u> M.D.N.C. R. 7.3(k). The Court sees no reason to depart from that general rule in this case. Accordingly, the Court will grant Defendants' Motion for Protective Order (Docket Entry 22), but without prejudice to Reeves' right to seek relief from the protective order if Defendants fail to present the qualified immunity issue to the Court for disposition within a reasonable period of time.

## III. CONCLUSION

Good cause exists to set aside the Clerk of Court's entry of default and, therefore, to decline to enter a default judgment and to permit late filing of Defendants' Answer.  In addition, Reeves has not shown "exceptional circumstances" to warrant the appointment of counsel, his Requests for Discovery should not have been filed with the Court, his proposed amendments of his Complaint cannot go forward because of undue prejudice and futility, and Defendants' assertion of qualified immunity warrants entry of a protective order, particularly given Reeves' failure to respond to Defendants' motion.

**IT IS THEREFORE RECOMMENDED** that Defendants' Motion to Set Aside Entry of Default (Docket Entry 14) be **GRANTED**.

**IT IS FURTHER RECOMMENDED** that Reeves' Motion for Default Judgment (Docket Entry 13) be **DENIED**.

**IT IS ORDERED** that Defendants' Motion for Enlargement of Time (Docket Entry 15) is **GRANTED**, and their Answer (Docket Entry 17) is accepted.

**IT IS FURTHER ORDERED** that Reeves' Motion for Appointment of Counsel (Docket Entry 18) is **DENIED.**

**IT IS FURTHER ORDERED** that Reeves' Requests for Discovery (Docket Entries 20, 25) are **STRICKEN**.

**IT IS FURTHER ORDERED** that Reeves' Motion for Leave to File an Amended Complaint (Docket Entry 21) is **DENIED.**

**IT IS FURTHER ORDERED** that Defendants' Motion for Protective Order (Docket Entry 22) is **GRANTED**, but without prejudice to Reeves' seeking permission to conduct discovery if Defendants fail to file an appropriate motion that permits adjudication of their qualified immunity defense within a reasonable amount of time.

____/s/ L. Patrick Auld_____
**L. Patrick Auld**
**United States Magistrate Judge**

September 29, 2011