# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| WILLIAM B. REEVES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:10CV56 |
| | ) | |
| CHANDRA RANSOM, MICHAEL | ) | |
| AIKENS, KENNETH LAWSON, | ) | |
| BRIAN BOWEN and K. EDWARDS, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This matter is before the Court on Defendants' motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. (Docket Entry 34.) Plaintiff William B. Reeves opposes the motion. (Docket Entry 36.) For the following reasons, it is recommended that the Court grant Defendants' motion for summary judgment.

## I. PROCEDURAL BACKGROUND

On January 22, 2010, Plaintiff filed this action against Defendants, Chandra Ransom, Michael Aikens, Kenneth Lawson, K. Edwards and Brian Bowen for violating his civil rights under 42 U.S.C. § 1983. (Docket Entry 2.) The United States Marshal's Service effected service by mail on Defendants on or about April 3, 2010. (Docket Entries 9, 10.) On September 30, 2010, Plaintiff filed a "Declaration for Entry of Default" (Docket Entry 11), and the Clerk of Court issued an Entry of Default against Defendant's for their failure to appear, answer or otherwise plead. (Docket Entry 12.) On October 7, 2010, Plaintiff filed a motion for default judgment. (Docket Entry 13.) On October 28, 2010, Defendants filed a

motion to set aside entry of default and a motion for enlargement of time. (Docket Entries 14, 15.) Following various other procedural events, United States Magistrate Judge L. Patrick Auld of this court found that good cause existed to set aside the Clerk of Court's entry of default, and therefore the court declined to enter a default judgment and permitted the late filing of Defendants' answer. (Docket Entry 27.) By order filed November 9, 2011, United States District Judge James A. Beaty adopted Judge Auld's recommended conclusions, denying Plaintiff's motion for a default judgment and granting Defendants' motion to set aside the entry of default. (Docket Entry 30.)

Plaintiff is seeking criminal charges against Defendants, a declaratory judgment, an injunction and $2.5 million in compensatory and punitive damages against each Defendant. (Compl. at 4-5, Docket Entry 2.) Defendants filed the instant motion for summary judgment on November 29, 2012. (Docket Entry 34.)

## II. FACTUAL BACKGROUND

This action arises out of an incident in 2009 at the Scotland Correctional Institution ("Scotland") where Plaintiff was housed. Plaintiff alleges that on May 10, 2009 he was removed from his assigned job as a cook in the prison kitchen and was escorted by Defendant Aikens, a correctional officer at Scotland, to the red-unit lock-up. (Compl. at 4, Docket Entry 2.)[1] Plaintiff asked Defendant Aikens to make sure that the prison staff brought Plaintiff's special wash clothing, extra mattresses, pillows, blankets and shoes which had previously been prescribed by the medical staff at Scotland. (*Id.*) Plaintiff alleges that

---

[1] In his response to the motion for summary judgment, Plaintiff states that he was fired from his job in the kitchen for allegedly stealing meat and was placed in administrative segregation. (*See* Pl.'s Resp. to Mot. Summ. J. at 1, Docket Entry 36.)

2

several hours later Defendant Bowen brought one mattress and some personal letters and papers to Plaintiff's cell. In response to Plaintiff's question about his medically-ordered extra mattress, pillows, blankets and his medically prescribed shoes, Defendant Bowen stated that he would "look into getting all of Plaintiff's medically ordered items." (*Id.*) According to Plaintiff, Defendant Bowen later told him that "there was no paperwork from medical for Plaintiff to have any of [the] items" and that "Plaintiff could face disciplinary action for having extra stuff in his cell." (*Id.*) Plaintiff alleges that Defendant Ransom, the assistant unit manager, told him that she had not seen "anything," but that she had tried to locate Plaintiff's clothing. (*Id.* at 3-4.)

According to Plaintiff, Defendants Edwards and Bowen were responsible for inventorying and packing Plaintiff's belongings. Plaintiff alleges that Defendants Edwards and Bowen intentionally stored Plaintiff's medically prescribed shoes in storage while Plaintiff was in segregation. (*Id.* at 4.) Plaintiff alleges that he submitted several requests and grievances asking for his items to be returned to him. (*Id.*)

Plaintiff alleges that he has a skin condition which requires special clothing, bedding and detergent. In his complaint, Plaintiff states that

> For 17 days or more, Plaintiff had to continue to suffer with pains of full skin irritation over his body. [Due] to the stuff the clothes are cleaned with. Pain from not having his extra mattress and pillows [due] to his severe medical needs. Plaintiff had shown staff his copies of the written medical doctor's orders. . . . Defendants [have] shown deliberate indifference in refusing to follow doctor's orders to treat Plaintiff's medical needs while housed on administrative segregation.

(*Id.* at 5.)

Defendants' summary judgment materials include the pleadings and all attachments thereto, and the affidavits of Defendants Bowen and Ransom, with attached exhibits, and the affidavit of Stephanie Leach, a Registered Nurse and Risk Manager/Standards Director for the North Carolina Department of Public Safety, Division of Adult Correction ("DOC"), along with related exhibits. Defendants' summary judgment materials show that on May 10, 2009, Plaintiff was placed in segregation. (Affidavit of Brian Bowen ¶ 4, Br. Supp. Mot. for Summ. J., Docket Entry 35-1; Affidavit of Chandra Ransom, Docket Entry 35-2.) Two Inmate Personal Property forms were completed by Officers Bowen and Edwards. One form was for property that would be stored until Plaintiff was released from segregation and the second form was to identify the property Plaintiff received. Plaintiff signed the forms acknowledging that the inventory was complete, accurate and that the property was received in the condition noted on the forms. (Ransom Aff., Ex. C.) On May 22, 2009, presumably after Plaintiff was released from segregation, Plaintiff acknowledged by his signature that the listed stored and personal property had been returned to him. (Ransom Aff., ¶ 10, Ex. D.)

According to Defendant Bowen, when he and Defendant Edwards took Plaintiff's personal items to him in segregation, Plaintiff inquired about his special wash, an extra mattress, pillows and blankets. (Bowen Aff. ¶ 8.) Plaintiff gave the officers an expired DC-490 form showing that he items had been medically prescribed. (Ransom Aff. ¶ 9.) Plaintiff had two pairs of Dr. 2 shoes, one older and one a newer pair; he had to choose which pair he wanted because inmates in segregation are allowed only one pair. (Bowen Aff. ¶ 9; Ransom Aff. ¶ 11.)

4

Under DOC policy, inmates with special wash clothing must bring their clothes with them when they are moved to segregation. If an inmate does not arrive in the segregation unit with his special wash clothes, the unit will contact the warehouse personnel to have a special wash laundry bag prepared for the inmate and sent to the segregation unit. (Ransom Aff. ¶ 6.) Defendant Bowen stated that he and Defendant Edwards were unaware that Plaintiff had orders for special wash. When they returned to Plaintiff's cell, his clothes had been sent to the laundry and mixed in with other inmates' clothing. (Bowen Aff. ¶ 8.) According to Defendant Ransom, "[t]he placement of [Plaintiff's] special wash clothing with other inmates clothing was human error." (Ransom Aff. ¶ 5.) Defendant Ransom stated that Plaintiff was issued new clothing and that "once it was established that [Plaintiff] had a current DC 490 in effect for the additional bedding, he was given those items." (*Id.* ¶¶ 8-9.)

As attachments to his memorandum in opposition to Defendants' motion for summary judgment, Plaintiff has submitted his affidavit and several exhibits. In his affidavit, Plaintiff attests that he had a current DC-490 form for his special wash and other items and that he showed this form to Defendants Bowen, Edwards and Ransom. (Pl.'s Aff. ¶ 5, Docket Entry 36-1.) Plaintiff also stated that Defendants had access to the current DC-490 through the DPS Offender Population Unified System ("OPUS"). (*Id.* ¶ 8.)

### III. DISCUSSION

#### A. Standard of Review

Summary judgment is appropriate when there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Zahodnick v. Int'l Bus. Machs. Corp.*, 135 F.3d 911, 913 (4th Cir. 1997). The party seeking

5

summary judgment bears the initial burden of coming forward and demonstrating the absence of a genuine issue of material fact. *Temkin v. Frederick County Comm'rs*, 945 F.2d 716, 718 (4th Cir. 1991) (citing *Celotex v. Catrett*, 477 U.S. 317, 323 (1986)). Once the moving party has met its burden, the non-moving party must then affirmatively demonstrate that there is a genuine issue of material fact which requires trial. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a fact finder to return a verdict for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Sylvia Dev. Corp. v. Calvert County, Md.*, 48 F.3d 810, 817 (4th Cir. 1995). Thus, the moving party can bear his burden either by presenting affirmative evidence or by demonstrating that the non-moving party's evidence is insufficient to establish his claim. *Celotex*, 477 U.S. at 331 (Brennan, dissenting). When making the summary judgment determination, the Court must view the evidence, and all justifiable inferences from the evidence, in the light most favorable to the non-moving party. *Zahodnick*, 135 F.3d at 913; *Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 196 (4th Cir. 1997).

Moreover, "once the moving party has met his burden, the nonmoving party must come forward with some evidence beyond the mere allegations contained in the pleadings to show there is a genuine issue for trial." *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 874-75 (4th Cir. 1992). The non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. *Id.* "The non-moving party cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Othentec Ltd. v. Phelan*, 526 F.3d 135, 140 (4th Cir. 2008)

(internal quotation omitted). Moreover, the non-movant's proof must meet the substantive evidentiary standard of proof that would apply at a trial on the merits. *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993), *modified on other grounds, Stokes v. Westinghouse Savannah River Co.*, 420, 429-30 (4th Cir. 2000); *DeLeon v. St. Joseph Hosp., Inc.*, 871 F.2d 1229, 1233 n.7 (4th Cir. 1989). Unsupported hearsay evidence is insufficient to overcome a motion for summary judgment. *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 959 (4th Cir. 1996).

The Court cannot make credibility determinations or weigh the evidence, but the Court should examine uncontradicted and unimpeached evidence offered by the moving party. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). However, the evidence submitted to the Court must be similar to that which could be credibly admitted at trial. *Guseh v. N.C. Cent. Univ.*, 423 F. Supp. 2d 550, 557 (M.D.N.C. 2005) (holding "Plaintiff must come forward with admissible evidence that is more than self-serving opinions or speculation") (citing *Causey v. Balog*, 162 F.3d 795, 801 (4th Cir. 1998)). To deny Defendants' motion for summary judgment the Plaintiff must prove there is a sufficient factual basis for needing a trial to settle genuine disputes of operative fact in regards to his claim of cruel and unusual punishment. (Fed. R. Civ. P. 56(c).)

## B. Official capacity claims – sovereign immunity

Defendants assert that they are immune from suit in their official capacities under the Eleventh Amendment. (Def.'s Mem. at 11, Docket Entry 35.) The Eleventh Amendment bars suits against states and any state instrumentality properly characterized as an "arm of the state." *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429-30 (1997). Eleventh

Amendment immunity is not absolute, however. "[T]he Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law." *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004) (citing *Ex parte Young*, 209 U.S. 123 (1908)). Federal courts thus may order prospective relief but cannot award damages unless the state waives its immunity or Congress abrogates the state's immunity in exercising its powers under the Fourteenth Amendment. *Id.*; *Coll. Sav. Bank v. Fla Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670 (1999).

Here, Defendants are clearly state officials who have been sued in their official capacities. As such, because Defendants have not waived their immunity and Congress has not abrogated it for section 1983 actions, Plaintiff cannot seek damages against them in their official capacities. *See Kelly v. Maryland*, 267 Fed. App'x, 209, 210 (4th Cir. 2008) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)) ("It is now well-settled that a state [or state official] cannot be sued under § 1983."). Moreover, Plaintiff's request for prospective relief – either in the form of a declaratory judgment or an injunction – fails because he does not allege an "ongoing violation of federal law" permitting the application of the *Ex parte Young* doctrine. *See DeBauche v. Trani*, 191 F.3d 499, 504-05 (4th Cir. 1999) (holding that Eleventh Amendment immunity barred declaratory and injunctive relief when no ongoing violations of federal law were alleged.). Plaintiff's claims here are clearly based on alleged conduct which occurred during a seventeen-day period; there is no allegation or evidence that the conduct is continuing.

Because Plaintiff seeks damages and prospective relief against state officials in their official capacities, but does not allege an ongoing violation of federal law, those claims are barred by Eleventh Amendment immunity.

## C. Individual capacity claims – Deliberate Indifference

Plaintiff alleges that Defendants were deliberately indifferent to his medical needs. In *Farmer v. Brennan*, 511 U.S. 825 (1994), the Supreme Court held that the Eighth Amendment to the Constitution "imposes duties on [prison] officials who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates." *Id.* at 832 (internal quotation and citation omitted). A successful Eighth Amendment claim contains two elements: the deprivation must be, objectively, "sufficiently serious," and the prison official must have demonstrated a "deliberate indifference to inmate health or safety." *Id.* at 834. In *Farmer*, the court held:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. This approach comports best with the text of the Amendment as our cases have interpreted it.

*Id.* at 837.

"Deliberate indifference is a very high standard – a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999). Rather, the "deliberate indifference" prong requires Plaintiff to make "two showings:"

> First, the evidence must show that the official in question subjectively recognized a substantial risk of harm. It is not enough that the officers *should*

9

> *have* recognized it; they actually must have perceived the risk. Second, the evidence must show that the official in question subjectively recognized that his actions were inappropriate in light of that risk. As with the subjective awareness element, it is not enough that the official *should have* recognized that his actions were inappropriate; the official action *must have* recognized that his actions were insufficient.

*Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (internal citations and quotation marks omitted) (emphasis in original). "The subjective component therefore sets a particularly high bar to recovery." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). "'Deliberate indifference entails something more than mere negligence. . . .'" *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 835). "It requires that a prison official know of and disregard the objectively serious condition, medical need, or risk of harm." *Id.* To constitute deliberate indifference, "the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990).[2]

Here, Plaintiff claims that prison officials were deliberately indifferent to his medical needs and thus violated his constitutional rights because he did not receive his special wash and medically prescribed extra bedding when he was sent to administrative segregation. Plaintiff alleges that the actions (or inactions) of Defendants Bowen, Edwards and Ransom resulted in his suffering back pain and skin irritation. However, as noted by Defendants, Plaintiff did not submit a sick call request or report an inmate medical emergency for these issues during the time he was in segregation. (Leach Aff. ¶ 5.) In fact, Defendants' summary judgment materials show that Plaintiff's only sick call requests while in segregation were for

---

[2] *Miltier* has been overruled by *Farmer* to the extent that it allowed a finding of deliberate indifference upon constructive knowledge, but it is still good law for the proposition cited.

a change of medication for head pain and for dental work. (Leach Aff. ¶ 6.) Moreover, once it was determined that Plaintiff did in fact have a valid DC-490, Plaintiff was provided with his additional prescribed bedding and other items. (Ransom Aff. ¶ 9.)

Plaintiff contends that he did not submit any sick call requests or declare a medical emergency because such requests would cost him "an extra fee of $5 or $7." (Pl.'s Resp. at 6, Docket Entry 36.) However, the fact that he submitted other sick call requests during this time period suggests that he had funds available to put in a sick call request. His failure to request medical attention supports Defendants' contention that they had no basis from which to infer a "substantial risk of serious harm." *Farmer*, 511 U.S. at 837.

Upon review of the record, including the DOC sick call records, the court finds that Plaintiff has not presented evidence sufficient to create a genuine issue of material fact as to whether any named Defendant was deliberately indifferent to his serious medical needs. At most, Defendants negligently failed to send Plaintiff's special wash laundry with him when he was sent to segregation. The only evidence before the court is Plaintiff's own conclusory and self-serving statements that he suffered medical problems as a result of not having his special wash and other items. Moreover, Plaintiff does not allege any facts that indicate that Defendants had the requisite states of mind to support a claim of deliberate indifference. While Plaintiff claims that Defendants "intentionally denied or delayed" his access to medical treatment items and "interfered" with the orders of a licensed physician (Pl.'s Resp. at 1), the evidence of record suggests that Defendants attempted, in good faith, to locate Plaintiff's clothing, issued him new special wash clothing when the originals could not be found, and provided additional bedding as soon as it could be determined Plaintiff had a

11

current DC-490 for medically prescribed items. (Ransom Aff. ¶¶ 7-9.) Even drawing all inferences in favor of Plaintiff, as the non-moving party, Defendants Bowen, Edwards and Ransom appear to have made every effort to secure the medically prescribed items for Plaintiff while he remained in administrative segregation while complying with prison procedures. At most, Plaintiff's claims allege negligence, which is not actionable under section 1983. *See Daniels v. Williams*, 474 U.S. 327, 328-30 & n.3 (1986); *Pink v. Lester*, 52 F.3d 73, 78 (4th Cir. 1995) ("The district court properly held that *Daniels* bars an action under § 1983 for negligent conduct. . . ."); *Ruefly v. Landon*, 825 F.2d 792, 793-94 (4th Cir. 1987) ("Because mere negligent conduct cannot support a claim for violation of the eighth amendment's cruel and unusual punishments clause, we affirm the district court's dismissal of . . . [the] complaint. . . ."). Additionally, Plaintiff has put forth no evidence to suggest that his "skin irritation" constituted an "*excessive* risk to inmate health" or that Defendants perceived it as such, particularly as Plaintiff submitted other medical requests during his seventeen days in segregation but did not seek medical attention for the skin condition. *Farmer*, 511 U.S. at 837 (emphasis added).

Plaintiff has named Michael Aikens and Kenneth Lawson as defendants, but the complaint is totally lacking as to any allegations of deliberate indifference to Plaintiff's medical needs by these two defendants. As to Defendant Aikens, Plaintiff only alleges that Defendant Aikens accompanied Plaintiff to segregation and that Plaintiff asked Defendant Aikens to make sure that he received his medically prescribed items. However, Plaintiff has presented no evidence that Defendant Aikens participated in any way in supplying or failing to supply the items Plaintiff requested. Additionally, Plaintiff has failed to provide any

evidence that would implicate Defendant Lawson for deliberate indifference to his medical needs. The claims against Defendants Edwards and Lawson should be dismissed.

**Qualified Immunity**

As to Plaintiff's claims against Defendants in their individual capacities, Defendants also contend that they are entitled to qualified immunity. The doctrine of qualified immunity "balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). The burden of proof and persuasion rests with the official asserting qualified immunity. *Meyers v. Balt. Cnty., Md.*, 713 F.3d 723, 731 (4th Cir. 2013).

Qualified immunity protects officials from personal liability "unless a plaintiff [shows] (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2080 (2011) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Courts have discretion as to which prong to analyze first, as failure to satisfy either prong ends the inquiry in favor of immunity for the official. *Pearson*, 555 U.S. at 236. Because Plaintiff has not raised a genuine issue of material fact as to whether his constitutional rights were violated in the first instance, the Court need not address whether Defendants are entitled to qualified immunity.

## IV. CONCLUSION

Based on the foregoing, **IT IS RECOMMENDED** that Defendants' motion for summary judgment (Docket Entry 34) be **GRANTED**.

_____
Joe L. Webster
United States Magistrate Judge

Durham, North Carolina
March 31, 2014